# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRENDA BENEDICT, ET AL,                )
                                       )
        Plaintiffs,                    )        Civil Action No. 2:14-cv-0678
                                       )
v.                                     )
                                       )        Judge Mark R. Hornak
SOUTHWESTERN PENNSYLVANIA              )
HUMAN SERVICES, INC, ET AL,            )
                                       )
        Defendants.                    )

## OPINION

**Mark R. Hornak, United States District Judge**

Brenda and David Benedict ("Plaintiffs" or "the Benedicts"), filed the Complaint in this action as co-administrators of the estate of their son, David. ECF No. 1-2, at ¶ 1. Defendants are (a) Southwestern Pennsylvania Human Services, Inc., (b) Bruno Mediate in his official capacity as Director of the Westmoreland County Adult Probation/Parole Office, (c) Bruno Mediate in his individual capacity, (d) Westmoreland County, and (e) Westmoreland Drug and Alcohol Commission. The Complaint alleges the same claims against all Defendants[1]: negligence (Count I); a survival action under 20 Pa. Cons. Stat. § 3373 and 42 Pa. Cons. Stat. § 8302 (Count II); a claim pursuant to Pennsylvania's Wrongful Death Act, 42 Pa. Cons. Stat. § 8301 (Count III); a due process claim pursuant to 42 U.S.C. § 1983 (Count IV); and an Eighth Amendment claim, also asserted pursuant to 42 U.S.C. § 1983 (Count V).

Before the Court are all Defendants' Motions to Dismiss all counts of the Complaint, ECF Nos. 5; 10; 25; 27, along with the briefs in support and in opposition to these motions, ECF

---

[1] Counts I, IV, and V specifically state in their headings that they are asserted against "all Defendants." ECF No. 1-2, at 7, 11, 12. Although Counts II and III do not contain the same specific designation, they both "demand judgment against the Defendants, jointly and severally," without further exclusion of any Defendant. *Id.* at 10. The Court therefore treats that all five Counts are asserted against all Defendants.

Nos. 6; 11; 24; 29; 32; 33; 34; 35. Based on the Court's consideration of the papers filed of record, stipulations of the parties, and the matters presented to the Court at the hearing/argument on September 22, 2014 as to the Defendants' Motions to Dismiss, the Court will grant the Motions in part, dismiss the Complaint with prejudice as to Counts IV and V (the federal claims), dismiss certain other claims based on the stipulations and concessions of the parties, and remand the action and remaining claims to state court forthwith for further disposition.

## I.   BACKGROUND

In the spring of 2012, the Court of Common Pleas of Westmoreland County sentenced Derek Benedict ("Mr. Benedict"), the son of David and Brenda Benedict, to participate in a rehabilitation program for drug addiction at the Day Reporting Center ("DRC").[2]  ECF No. 1-2, at ¶ 12.  The DRC opened in approximately November, 2010, and its program served as an "alternative to incarceration at the Westmoreland County Jail." *Id.* at ¶¶ 13–14.  The Complaint alleges that rather than fulfilling its role as a drug rehabilitation facility, the DRC instead functioned as a drug haven of sorts, complete with "drug dealers openly approaching and selling drugs to DRC residents at the DRC, [and] the use of drugs by residents in and around the premises of the DRC," among other issues. *Id.* at ¶ 15.  The Defendants allegedly "fail[ed] to supervise the DRC residents . . . to protect [them] from drug dealers," "fail[ed] to monitor the DRC premises to prevent drug dealers from selling [to] residents," "fail[ed] to adequately staff the DRC," and failed in a host of other ways. *Id.* at ¶ 29(a)–(l).  These problems allegedly became so severe that the facility needed to close for a period of time. *Id.* at ¶ 21.  Once the DRC reopened, Plaintiffs allege that the Defendants' endemic failures in operating the facility were not remedied. *Id.* at ¶ 23.  "As a direct result of the Defendants' continued failure to protect

---

[2] Plaintiffs state in their Opposition Brief that Mr. Benedict had to attend the DRC "from 1:00 p.m. to 4:00 p.m. every day." ECF No. 32, at 2.

its residents from drug dealers," the Complaint alleges that on May 4, 2012, Mr. Benedict purchased heroin from a drug dealer while present at the DRC, subsequently ingested the heroin at home, and died of a drug overdose. *Id.* at ¶¶ 24–26.

The Complaint was originally filed in the Court of Common Pleas of Westmoreland County and was removed to this Court by Defendants Westmoreland County and Bruno Mediate in his individual capacity. ECF No. 1. All Defendants have filed Motions to Dismiss the Complaint; Bruno Mediate in his official capacity has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), while all other Defendants have moved to dismiss under Rule 12(b)(6).

The parties stipulated on the record in open court during oral argument as follows: Counts IV and V are dismissed with prejudice as asserted against Westmoreland Drug and Alcohol Commission, Inc., and Southwestern Pennsylvania Human Services, Inc. Count I is also dismissed with prejudice as asserted against Westmoreland County and Bruno Mediate in his individual capacity based on stipulation. The parties also stipulated on the record in open court that Count IV, a claim purportedly based on the Due Process Clause of the Fifth Amendment, is to be deemed amended to instead implicate the Due Process Clause of the Fourteenth Amendment, and all references to the Fifth Amendment are deemed to refer to the Fourteenth Amendment.[3] Also on the record in open court, per the parties' stipulation, this Court denied Westmoreland Drug and Alcohol Commission, Inc., and Southwestern Pennsylvania Human Services, Inc.'s Motions to Dismiss Counts I–III without prejudice to re-assertion of those arguments, if appropriate, in a summary judgment or judgment on the pleadings motion.

---

[3] There are no federal Defendants in this case, so the Due Process Clause of the Fifth Amendment has no application here. The parties stipulated that arguments in support of their motions to dismiss and responses thereto apply with equal force to the Fourteenth Amendment due process claim as they did to the asserted Fifth Amendment due process claim.

The Court also dismisses with prejudice Counts I–V as asserted against Bruno Mediate in his official capacity. Plaintiffs concede in their Response to Motion to Dismiss by Defendant Bruno Mediate in His Official Capacity that it "appears that Counsel for the Defendant is correct," ECF No. 24, at 2, and the doctrine of sovereign immunity bars the claims against Bruno Mediate in his official capacity. The Court agrees that a suit against Mr. Mediate in his official capacity constitutes a suit against the Commonwealth of Pennsylvania because county probation officers are part of the judiciary, which is an arm of the State. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity."); *First Judicial Dist. v. Pa. Human Relations Comm'n*, 727 A.2d 1110, 1112 (Pa. 1999). Since such suit is impermissible under the doctrine of sovereign immunity, *Regelman v. Weber*, No. 10-675, 2011 WL 1085685, at *3 n.2 (W.D. Pa. Mar. 21, 2011), and because Plaintiffs present no authority to the contrary, all claims against Bruno Mediate in his official capacity are also dismissed with prejudice.

Lastly, the Court now dismisses with prejudice Counts I–III as asserted against Westmoreland County and Bruno Mediate in his individual capacity pursuant to Plaintiffs' statement in their Opposition that they "concede that the negligence, wrongful death and survival action counts (Counts I – III in the Complaint) cannot proceed against these Defendants due to the Pennsylvania Political Subdivision Tort Claims Act." ECF No. 32, at 5.

As for the matters not subject to these various stipulations and concessions, all that remains for consideration by the Court is the Motion to Dismiss filed on behalf of both Bruno Mediate in his individual capacity and Westmoreland County (collectively, "Defendants") as to Counts IV and V. ECF No. 11.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when plaintiffs fail to allege a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).  Determining sufficiency of a complaint requires "accept[ing] all of the complaint's well-pleaded facts as true, but [courts] may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  Courts "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949)).  The allegations of a valid complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (internal citation and quotation marks omitted).

## III.    DISCUSSION

Plaintiffs allege claims implicating the Fourteenth Amendment's Due Process Clause and Eighth Amendment's Cruel and Unusual Punishment Clause.  ECF No. 1-2, at ¶¶ 39–52.  To advance a claim via 42 U.S.C. § 1983, plaintiffs must allege that they were deprived of a right secured by the Constitution or laws of the United States by a person acting with the authority of state law. *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013) (en banc), *cert. denied*, 134 S. Ct. 824 (2013).  "The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff

has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (2000) (en banc) (internal citation and quotation marks omitted). This means that if the Court determines that the Complaint fails to allege a deprivation of a constitutional right, the Court will not reach Defendants' other arguments that (1) Mr. Mediate is entitled to qualified immunity, (2) Westmoreland County cannot be held liable and (3) supervisory liability is not established. *See Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 n.2 (3d Cir. 2006) ("[T]he initial inquiry under the doctrine of qualified immunity and the doctrine of municipal liability asks whether the plaintiff asserted a violation of a cognizable constitutional right."); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) ("'Failure to' claims—failure to train, failure to discipline, or . . . failure to supervise—are generally considered a subcategory of policy or practice liability.").[4] The Court will first consider the Benedicts' claim under the Eighth Amendment and then turn to the Fourteenth Amendment due process claim.

## A. Eighth Amendment Cruel and Unusual Punishment Clause Claim (Count V)

Defendants move to dismiss Count V, which alleges "deliberate indifference to the substantial risk of harm to Derek Benedict in violation of the Eighth Amendment." ECF No. 1-2, at ¶¶ 46–52. Plaintiffs contend that Mr. Benedict had an Eighth Amendment right "to be protected from harm" during the hours he attended the drug rehabilitation program at the DRC. *Id.* at ¶ 47. Defendants' counterargument goes as follows: the Eighth Amendment "applies only to persons who are *incarcerated* as a result of a conviction and sentence," and since Mr. Benedict was sentenced to a drug rehabilitation program rather than to prison, he was not "incarcerated"

---

[4] Simply put, one does not need to be immune from liability for conduct that does not amount to a constitutional violation, nor can one be held accountable for failure to supervise conduct that does not make out such a claim. Furthermore, no county may be held liable via section 1983 for an unconstitutional custom, policy, or practice, if the custom, policy, or practice at issue did not cause some deprivation of constitutional rights.

6

for Eighth Amendment purposes. ECF No. 11, at 3 (emphasis added). Thus, Defendants contend that Plaintiffs cannot state an Eighth Amendment claim as a matter of law. *Id.* at 3–4.

The Eighth Amendment guards against the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. Among the guarantees associated with Eighth Amendment protection is the right to "'humane conditions of confinement.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Notably, the conditions-of-confinement protection includes an affirmative duty on the government's part to "'take reasonable measures to guarantee the safety'" of those in its custody. *Id.* at 256 (quoting *Farmer*, 511 U.S. at 832).

The Third Circuit has explained that "[t]o state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The Court concludes that the Complaint fails to establish both the first element of the Eighth Amendment claim, which is objective, and also fails to support the second, subjective element.[5]

The primary inquiry with regard to the first prong, which is itself dispositive of the Eighth Amendment issue, is whether Mr. Benedict's participation in the rehabilitation program "from 1:00 p.m. to 4:00 p.m. every day," ECF No. 32, at 2, is sufficiently analogous to incarceration to trigger Eight Amendment protections. The Court concludes that it is not.

---

[5] Because those first and second elements are not met, the Court will not consider the third element, causation.

The Complaint certainly alleges facts sufficient to imply that the government "ha[d] secured a formal adjudication of guilt in accordance with due process of law."[6] *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Plaintiffs' allegation that their son was "sentenced" implies that Mr. Benedict attended a *mandatory* program, where he was *confined* for a certain period of time each day. ECF No. 1-2, at ¶ 12–13. While Supreme Court precedent does not appear to explicitly require "incarceration" for the Eighth Amendment to apply, the Third Circuit's construction plainly states that it is a necessary component of the analysis. *Levi*, 696 F.3d at 367; *see also Friedman v. Bethel Park Police Dep't*, No. 09-711, 2010 U.S. Dist. LEXIS 41278, at *15 (W.D. Pa. April 6, 2010) ("[T]he Eighth Amendment applies only to those persons who were *incarcerated* as a result of a conviction and sentence.") (emphasis added) (citing *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)).

According to Black's Law Dictionary, "incarceration" means "[t]he act or process of confining someone; imprisonment." Black's Law Dictionary (10th ed. 2014). While this definition may not foreclose the possibility that Mr. Benedict was incarcerated, or confined,

---

[6] This is a common hurdle for those seeking relief under the Eighth Amendment because protection against cruel and unusual *punishment* "applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'" *Graham v. Connor*, 490 U.S. 386, 398–99 (1989) (quoting *Ingraham*, 430 U.S. at 671 n.40). While the Supreme Court in *Graham* and *Ingraham* did not state the Eighth Amendment is available exclusively to those who are incarcerated, the Court did hold that Eighth Amendment conditions-of-confinement protection is not available *prior to* formal criminal adjudications, *Ingraham*, 430 U.S. at 671 n.40, as in the case of pre-trial detainees. The reason for this is simple: if there has not yet been adjudication and punishment issued, there can be no cruel and unusual *punishment* for Eighth Amendment purposes. *Id.* ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").

While our Court of Appeals has indeed held that pre-trial detainees are not covered under the Eighth Amendment because there has been no formal adjudication and *punishment*, or *sentence*, on the Amendment's terms, *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (internal citations omitted), Plaintiffs here allege that the Court of Common Pleas "sentenced" Mr. Benedict to attend the drug rehabilitation program. ECF No. 1-2, at ¶ 12. The question is thus not the typical one of whether an individual was incarcerated in the traditional sense of the word, but whether participation in a drug rehabilitation program for several hours per day is similar enough to incarceration for the Eighth Amendment to apply.

during the time he was obligated by court order to be physically present at the DRC, case law and the Complaint itself counsel otherwise.

Beginning with the latter, the Complaint specifically states that the "program at the Day Reporting Center [which Mr. Benedict attended] was created as an *alternative to incarceration* at the Westmoreland County Jail." ECF No. 1-2, at ¶ 13 (emphasis added). The Court believes that the Plaintiffs' characterization of the program not as mandatory confinement, but as an *alternative* to such confinement, carries some weight. Turning to the case law, it appears that the Third Circuit has not defined "incarceration" when using the term in the Eighth Amendment context. In the context of the Sentencing Guidelines, however, another district court in this Circuit has held that because the Guidelines "treat[] community confinement as an alternative to a sentence of imprisonment in certain situations . . . the term 'incarceration' in [Guidelines] section 4A1.2(e)(1) refers to imprisonment in a jail or similar correctional facility and does not include residence in a community treatment center."[7] *United States v. Jordan*, 734 F. Supp. 687, 688 (E.D. Pa. 1990). The Third Circuit has cited *Jordan* approvingly when it held that "'community confinement' cannot constitute 'imprisonment'" when interpreting Guidelines section 5C1.1. *United States v. Serafini*, 233 F.3d 758, 777 (3d Cir. 2000). Although sentencing matters present different considerations from those at issue here, our Court of Appeals has recognized a distinction, in at least that context, between traditional incarceration and its alternatives, such as the drug rehabilitation program to which Mr. Benedict was sentenced. That being the case, the Court is hesitant to hold that Eighth Amendment protections adhere in situations where individuals serve sentences that include only intermittent, community-based attendance or "custody," as when Mr. Benedict only attended the DRC for three hours per day.

---

[7] Importantly, the court explained that Guidelines section 4A1.2(b)(1) "defines 'sentence of imprisonment' as a sentence of incarceration." *Jordan*, 734 F. Supp. at 688. Therefore, "imprisonment" and "incarceration" are interchangeable in at least that context.

Moreover, the vast majority of cases dealing with the Eighth Amendment use the specific terms "prisoner" and "prison official." *E.g.*, *Farmer*, 511 U.S. at 834; *Levi*, 696 F.3d at 367. The Court also observes that neither the Court, nor counsel, has uncovered case law recognizing Eighth Amendment protection for those not incarcerated or imprisoned but instead sentenced to attend an alternative, community-based treatment program several hours each day, as was Mr. Benedict. ECF No. 11, 3–4. Although some courts have found no Eighth Amendment protection for those on parole release, *see Bradley v. New Jersey State Parole*, No. 06-5255, 2007 WL 1876492, at *3 (D.N.J. June 27, 2007) (finding no viable claim where the plaintiff was allegedly harassed by officers who came to his home during a period of parole release rather than incarceration), or those disciplined in public school, *see Marsh v. Delaware State Univ.*, No. 05-00087, 2006 WL 141680, at *3 (D. Del. Jan. 19, 2006) (finding no claim alleged when a public school expels a student because he was not incarcerated), others have recognized that the door is not closed to such an assertion, *see Hoffman v. Stulga*, 464 F. App'x 229, 232 (5th Cir. 2011) (per curiam) (assuming without deciding that the Eighth Amendment's protections could apply to felons on probation while upholding dismissal of plaintiff's claim based on other parts of the Eighth Amendment analysis); *Coulter v. Studeny*, No. 12-60, 2012 WL 4857039, at *1 (W.D. Pa. Oct. 12, 2012) (explaining that the plaintiff "provides no citations to any legal authority indicating that conditions of probation *can* give rise to an Eighth Amendment claim," but proceeding to dismiss the count on different Eighth Amendment grounds).[8]

---

[8] The most analogous case this Court could locate was *Bratchett v. Braxton Environmental Services Corp.*, 564 F. App'x 229 (7th Cir. 2014). There, the plaintiff, albeit a prisoner, brought a § 1983 claim alleging deliberate indifference to unsafe working conditions at a tire-recycling company where he participated in a work-release program. *Id.* at 230. Therefore, he was not physically confined to the prison grounds at the time of his injury. The plaintiff lost his finger in a tire-shredding machine and sued the company and officials involved in the prison's work-release program, claiming that they knew of the dangerous conditions at the work site and failed to approve his request to leave the job. *Id.* Notably, the plaintiff testified that had he disobeyed his supervisor at the work site, he would have been locked up. *Id.* at 231 ("[A]ny act of noncompliance would result in [the officials] taking him back to prison and locking him up."). The Seventh Circuit vacated and remanded in part the district court's grant of

In this Court's judgment, the fact that Mr. Benedict's attendance obligations at the drug-treatment program, while mandated by a judicial sentencing order, were in the context of (1) his being free to come and go as he pleased for all but three (3) hours each day; (2) his ability to live at home; and (3) his ability to engage in any lawful activity he wanted while away from the DRC, demonstrates that for Eighth Amendment purposes, he simply was not "incarcerated" or "imprisoned," meaning the first prong of the Eighth Amendment test cannot be satisfied as a matter of law.

That said, even if the Court could conclude that the facts pled met the first prong of the Eighth Amendment analysis, the Complaint also fails to establish the second, subjective element. To meet that prong, Plaintiffs must adequately allege that Defendants were "deliberately indifferent to that substantial risk to [Mr. Benedict's] health and safety," meaning that they were actually aware of the excessive risk to Mr. Benedict's safety. *Levi*, 696 F.3d at 367. Plaintiffs can prove actual knowledge either directly or by inference through circumstantial evidence— "[i]n other words, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer*, 511 U.S. at 842). Plaintiffs have only pled facts indicating that Defendants knew of the rampant problems at the DRC prior to its shutdown. ECF No. 1-2, at ¶¶ 15–20. After the DRC reopened, Plaintiffs' sole allegation

---

summary judgment on the grounds that a reasonable jury could find that two defendants knew of a substantial risk of serious injury and failed to protect the plaintiff. *Id.* at 232–33.

As in *Bratchett*, Plaintiffs here allege Mr. Benedict was exposed to unsafe conditions while participating in a program outside the traditional prison setting. ECF No. 1-2, at ¶¶ 15–24. They allege facts sufficient to infer that Mr. Benedict was required to attend the program because he was "sentenced" to be there—his attendance at the DRC was a mandated, post-verdict sanction imposed by a court. However, there is no indication from the opinion in *Bratchett* that anyone challenged that plaintiff's status as "incarcerated," and furthermore, the plaintiff in that case was in fact a prisoner at the time of the incident, though he was not physically within the confines of a penitentiary when the injury occurred. As a prisoner, Bratchett still could not go home at the end of the day, and still relied on prison officials to provide him with all of the basic necessities of living. This is unlike Mr. Benedict's experience, where he attended the program at the DRC for three hours each day and then went about his life outside of the DRC detached from any direct supervision of the government. Without more, this Court cannot conclude that Mr. Benedict's participation in the DRC program is so analogous to the situation in *Bratchett* as to render him "incarcerated" such that the Eighth Amendment applies.

about any knowledge the officials then had is a generic averment that their "failures resumed." *Id.* at ¶ 23. There are no specific plausible factual allegations in support of that statement, and it is vague (at best) as to whether the statement refers to the legal conclusion that Defendants "had a duty to protect" program participants, *id.* at ¶ 19, which the Court would disregard as a legal conclusion as instructed by our Court of Appeals in *Fowler*, or whether Plaintiffs refer to the numerous specific factual allegations documented in other paragraphs of the Complaint.[9] The Complaint thus fails to state a claim upon which relief may be granted as to the second element as well.[10]

Because the Court concludes that the Complaint fails to state a legally sufficient Eighth Amendment claim, Count V will be dismissed as to both Defendants. Furthermore, because amendment would be futile as to this claim because there are no further facts under the circumstances which could establish an Eighth Amendment violation as a matter of law (particularly as to the issue of incarcerated status), *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (holding that district courts must permit curative amendments "unless an amendment would be inequitable or futile"), the dismissal of that Count will be with prejudice.

**B. Fourteenth Amendment Due Process Claim (Count IV)**

Moving to the substantive due process argument, the Court must first address whether it is appropriate to even consider that claim, as the United States Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized

---

[9] It is also noteworthy in this regard that the Complaint alleges that the requisite deliberate indifference is "specified in paragraph 29." ECF No. 1-2, at ¶ 49. However, Paragraph 29 is contained within Count I, and alleges many ways in which Defendants were *negligent*. Our Court of Appeals has clearly explained, time and again, that negligence does not constitute deliberate indifference. *E.g.*, *Barkes*, 766 F.3d at 325. Therefore, those allegations are insufficient to establish deliberate indifference.

[10] Because the Court cannot identify facts that would plausibly satisfy the first or second elements of the Eighth Amendment analysis, it will not consider whether the third prong of that test is met.

notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citations and quotation marks omitted). However, the Supreme Court has also explained that if the claim is *not* "covered by" some other Amendment, it is properly considered under a substantive due process rubric. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Because the Court concludes that the Eighth Amendment is inapplicable to this case, resulting in dismissal of the Complaint as it pertains to an Eighth Amendment violation, the Court concludes it is proper to consider whether the Complaint plausibly alleges facts sufficient to establish a due process violation.

The Fourteenth Amendment offers both procedural and substantive protections to citizens by ensuring that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. At issue here is whether a substantive due process violation arises when an individual who was sentenced to a drug rehabilitation program (as an alternative to incarceration) obtained drugs at the facility and ingested the drugs at home after leaving the treatment facility, resulting in the individual's death.

As a general matter, the government has no affirmative duty to protect its citizens from private harms. *Ye v. United States*, 484 F.3d 634, 636 (3rd Cir. 2007) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). While the Due Process Clause protects against potential abuses of government power to deprive citizens of life, liberty, or property, "[t]he Constitution protects people from the government, not from each other or from themselves." *Ye*, 484 F.3d at 637. However, courts recognize that plaintiffs may establish due process violations through one of two legal theories which constitute exceptions to this general rule: the "'special relationship' exception and the 'state-created danger' exception." *Id.* Because

13

the Court concludes that neither exception is applicable to this case, Count IV will also be dismissed.

### *1. Special Relationship Analysis*

The Supreme Court has explained that "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, *or other similar restraint of personal liberty*" which triggers substantive due process protections. *DeShaney*, 489 U.S. at 200 (emphasis added). If the State "'takes a person into its custody and holds him there against his will,'" a special relationship is created and the government acquires an affirmative obligation to protect the individual from harm—including harm caused by third parties.[11] *Morrow*, 719 F.3d at 167 (quoting *DeShaney*, 489 U.S. at 199–200). The deprivation of liberty that occurs under the Due Process Clause when the government has a "duty to protect" does not arise from the government's "'failure to act to protect [an individual's] liberty interests against harms inflicted by other means,'" but rather "'from the limitation which [the government] has imposed on his freedom to act on his own behalf.'" *Morrow*, 719 F.3d at 168 (quoting *DeShaney*, 489 U.S. at 200). The hallmark of a special relationship, then, is "physical custody," *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1370 (3d Cir. 1992) (en banc), and no affirmative duty of protection is available "to individuals who are free to leave state custody." *Torisky v. Schweiker*, 446 F.3d 438, 445 (3d Cir. 2006).

Defendants contend that Mr. Benedict was not in the State's "custody" as a matter of law and therefore the State acquired no special relationship to protect him from harm. ECF No. 11, at 5. Such custody, according to Defendants, only arises when the State "assume[s] a full-time,

---

[11] The underlying rationale for this idea is that the State's restraint of the individual renders him essentially "unable to care for himself." *DeShaney*, 489 U.S. at 200. When the State then also "fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." *Id.*

continuous, physical custody . . . which renders the person wholly dependent upon the state for his or her basic needs of food, shelter, clothing, and safety." *Id.* *DeShaney*'s language alone does not foreclose a finding that Mr. Benedict was in the State's custody because he was, after all, "sentenced"[12] to attend the day treatment program at the DRC, as he had no choice but to physically appear there on the terms the State court imposed. However, Third Circuit precedent counsels otherwise.

Neither the Court, nor counsel, has located a case dealing directly with whether individuals sentenced to participate in drug rehabilitation programs mandating a defendant's physical presence for several hours per day at a court-directed location are in "custody" for the purposes of the substantive due process analysis. However, the Supreme Court and our Court of Appeals have provided guidance in determining that they are not.

On the one hand, courts have definitively held that a special relationship requiring State protection arises in cases involving traditional incarceration, *DeShaney*, 489 U.S. at 198 (explaining that *Estelle v. Gamble*, 429 U.S. 97 (1976), recognized the government's obligation to provide medical care to incarcerated individuals), and involuntary commission to a mental institution, *id.* at 199 (noting that *Youngberg v. Romeo*, 457 U.S. 307 (1982), established the State's duty to "provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others" (internal citation omitted)). Moreover, the Third Circuit has recognized that the duty extends to state-regulated foster care of children. *Nicini*, 212 F.3d at 808 ("Foster children, like the incarcerated or the involuntarily committed, are placed in a custodial environment and are unable to seek alternative living arrangements." (internal citation and quotation marks omitted)).

---

[12] As a matter of common sense, a sentence in a criminal proceeding is generally imposed against an individual's will.

By contrast, the Third Circuit has found no special relationship existed in cases pertaining to state control over developmentally disabled individuals living in their own homes, *Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. City of Phila.*, 874 F.2d 156, 166 (3d Cir. 1989), or public school students, *see D.R.*, 972 F.2d at 1371–72 (contrasting the physical custody that State officials exercise over public school children with that wielded over prisoners and involuntarily committed patients on the grounds that the latter categories of individuals are "wholly dependent upon the state for food, shelter, clothing, and safety" and are "not free to leave," whereas the former category and their parents maintain control over where the individuals attend school and "may turn to persons unrelated to the state for help on a daily basis"), among others.

Most significant to this inquiry is the Third Circuit's decision in *Philadelphia Police & Fire Association for Handicapped Children, Inc. v. City of Philadelphia*. In that case, a class of intellectually disabled[13] "persons living at home" brought a claim against the State alleging a substantive due process violation on the basis of cuts to a state-sponsored program for those individuals resulting from budget shortages. *Phila. Police*, 874 F.2d at 160. The class alleged that because the State's statutory scheme mandated that these individuals enter the system, "where a plan for their care, including a placement determination, is made, the state has custody over those [intellectually disabled] assigned to live at home." *Id.* at 167–68. The class also asserted that "cessation of services will end in literal incarceration." *Id.* at 168. Despite these claims, our Court of Appeals held that no special relationship existed between the State and the class and thus there had been no substantive due process violation. *Id.* at 166. In a footnote, the court further stated, "[t]he district court found that because the class members participated in

---

[13] The Court adopts this term from the Supreme Court's recent opinion in *Hall v. Florida*, 134 S. Ct. 1986 (2014), in which the Court explained that "[p]revious opinions of this Court have employed the term 'mental retardation.' This opinion uses the term 'intellectual disability' to describe the identical phenomenon." *Id.* at 1990.

state-sponsored day programs, they were in the custody of the state while participating in them. In light of *DeShaney*, we do not believe that such intermittent custody gives rise to an affirmative duty on the state's part." *Id.* at 168 n.9.

Reading the alleged facts as pled by the Plaintiffs as true and drawing all reasonable inferences in Plaintiffs' favor (as the Court must), the Court concludes that Mr. Benedict (1) was sentenced, and (2) was required to be at the DRC for a certain period of each day, and was *at those specific times* without the ability to come and go as he pleased. ECF Nos. 1-2, at ¶ 12; 32 at 2. Unlike parents of public school children, who retain the ability to send their children to a different school or to home school them if their children are subjected to a risk of harm at school, *D.R.*, 972 F.2d at 1371, Mr. Benedict was not free to explore other treatment facilities despite the fact that the environs of the DRC was allegedly infested with drugs, ECF No. 1-2, at ¶¶ 15–17. Although Plaintiffs do not allege that Mr. Benedict was in the State's *full-time* custody, they do allege facts that tend to demonstrate Mr. Benedict was in the State's care at the time he obtained the drugs that ultimately caused his death. *See id.* at ¶ 25 ("[O]n May 4, 2012, while Mr. Benedict was in the custody of the Defendants at the DRC, a drug dealer approached Mr. Benedict and sold him heroin."). The fact that Mr. Benedict could "come and go from the Center," as Defendants claim, ECF No. 11, at 6, does not undermine the fact that a court sentenced him to attend, and that he was "confined" while there. For the duration of that time, he may well have been "without reasonable means of self-protection," *D.R.*, 972 F.2d at 1370, and was not "free to leave state custody," *Torisky*, 446 F.3d at 445.

However, such facts are insufficient to withstand a Motion to Dismiss when our Court of Appeals has concluded, albeit not in the context of a criminal sentence, that "intermittent custody [does not] give[] rise to an affirmative duty on the state's part." *Phila. Police*, 874 F.2d at 168

n.9. "Custody" as interpreted by the Third Circuit amounts to the "full time severe and continuous restriction of liberty" present in circumstances of incarceration and institutionalization, among others, which render individuals "wholly dependent upon the state for food, shelter, clothing, and safety" and without the "opportunity to seek outside help to meet their basic needs."[14] *D.R.*, 972 F.2d at 1371. Here, the Complaint plainly demonstrates that Mr. Benedict did not live at the DRC, but rather only that he attended the facility for a certain, relatively short, period of time for treatment each day. ECF Nos. 1-2, at ¶ 26; 32 at 2. As such, in light of applicable Circuit precedent, the Court is constrained to conclude that he did not have a special relationship with the State that gave rise to an affirmative, Fourteenth Amendment-based duty to protect him from third parties, even while he was physically present in the facility.

### 2. *State-Created Danger Analysis*

The government may also acquire an affirmative duty to protect "if the state's own actions create the very danger that causes the plaintiff's injury." *Morrow*, 719 F.3d at 167. The Third Circuit has established a four-factor test to make out such a claim: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts . . . and (4) a state actor affirmatively

---

[14] This statement may at first glance appear inconsistent with a holding that the State has an affirmative duty to protect foster children despite the fact that some "enjoy a greater degree of freedom and are more likely to be able to take steps to ensure their own safety" than prisoners and others who are party to a special relationship. *Nicini*, 212 F.3d at 808. Still, our Court of Appeals held that the relationship between the state and foster children sufficiently analogous because the state's affirmative act of taking individuals into custody and affirmatively seeking placement with families who would care for them "renders the individual substantially dependent upon the state to meet his or her basic needs." *Id.* (internal citation and quotation marks omitted); *D.R.*, 972 F.2d at 1372 ("A relationship between the state and foster children arises out of the state's affirmative act in finding the children and placing them with state-approved families. By so doing, the state assumes an important continuing, if not immediate, responsibility for the child's well-being. In addition, the child's placement renders him or her dependent upon the state, through the foster family, to meet the child's basic needs." (internal citation omitted)). It is thus the State's affirmative action of investigating potential families and approving placements that courts have found sufficient to establish a special relationship such that the State is responsible for a foster child's wellbeing. There is no similar circumstance here.

18

used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (footnotes omitted) (internal citations and quotation marks omitted).

Defendants attack Count IV by asserting that Plaintiffs fail to allege facts sufficient to meet the first, second, and fourth elements of the state-created danger test.[15]  ECF No. 11, at 7–13.  Because the Court agrees that the Complaint does not allege facts sufficient to meet those prongs of the state-created danger test, Plaintiffs may not proceed on that theory.

Beginning with the fourth element, Defendants assert that Plaintiffs have failed to point to any affirmative act by the State which created a danger to Mr. Benedict or rendered him more vulnerable to danger.  ECF No. 11, at 10.  In other words, Defendants claim the Complaint is premised upon "inactions and omissions," *id.*, which our Court of Appeals has held insufficient to establish the fourth factor, *see Phillips*, 515 F.3d at 236 (holding that when "allegations, at their core, are omissions, not commissions—inactions rather than actions," the fourth prong cannot be met).

The Third Circuit has cautioned that "the line between action and inaction is not always easily drawn," but that courts should also be wary of maintaining claims where "[a]ny and all failures to act would be transformed into an affirmative exercise of authority." *Morrow*, 719 F.3d at 178; *Bright*, 443 F.3d at 282 ("[W]e have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised.").  When a complaint "redefine[s] clearly passive inaction as affirmative acts," as occurs when plaintiffs plead that officials failed to enforce certain policies, the claim is generally

---

[15] Since Defendants do not contest that Plaintiffs have alleged facts establishing the third prong of the test, the Court assumes without deciding that Plaintiffs' claim meets that element.

insufficient to show an affirmative creation or enhancement of danger to a plaintiff. *See Morrow*, 719 F.3d at 178 (finding a school's alleged failure to adequately enforce its disciplinary policy falls short of an affirmative act for purposes of the test); *Kaucher*, 455 F.3d at 433 n.11 (collecting cases standing for the proposition that "failures to act cannot form the basis of a valid § 1983 claim"). Although at times the difference between "action" versus "inaction" is simply a matter of phrasing, the key to distinguishing between the two is deciding whether State officials "created or increased the risk" themselves, or whether they simply "might have done more" to protect individuals from harm. *Morrow*, 719 F.3d at 179 (quoting *id.* at 186 (Ambro, J., concurring and dissenting)).

Here, the Complaint is undoubtedly framed in terms of failures and inaction. Plaintiffs allege, *inter alia*, that Defendants failed to supervise program participants and relevant employees, failed to monitor the premises, failed to prevent drug sales, failed to appropriately staff the facility, failed to enact adequate safety policies, and failed to train officers. ECF No. 1-2, at ¶¶ 20, 29. These shortcomings are akin to the types of actions the Third Circuit has declined to categorize as affirmative acts, such as failing to efficiently detain a criminal suspect or failing to notify proper authorities of a threat and deferring the suspension of an employee who ultimately caused great harm. *See Bright*, 443 F.3d at 283–84 ("We conclude that the state cannot 'create danger' giving rise to substantive due process liability by failing to more expeditiously seek someone's detention, by expressing an intention to seek such detention without doing so, or by taking note of a probation violation without taking steps to promptly secure the revocation of the probationer's probation."); *Phillips*, 515 F.3d at 236. By contrast, these failures are wholly dissimilar from circumstances the Circuit has deemed "affirmative acts," such as a situation where police officers detained an intoxicated woman, sent her husband

20

home, and then released her to walk home alone in cold weather, which ultimately caused severe injuries to the woman. *Kneipp v. Tedder*, 95 F.3d 1199, 1209 (3d Cir. 1996).

Moreover, this case differs from *Kneipp* with regard to "*who* created the danger": here, it was clearly a third-party drug dealer who sold Mr. Benedict the heroin, and Mr. Benedict himself who ingested the drugs; in *Kneipp*, "police officers intervened to cut off [the Plaintiff's] private source of protection by giving [her husband] permission to go home alone, thereby increasing the danger that [the Plaintiff] would suffer harm in her visibly intoxicated state when they abandoned her." *Id.* at 1210 (emphasis in original). In short, Plaintiffs' allegations that Defendants failed in various ways to protect their son from drug dealers in the vicinity of the treatment center amounts to passive inaction that allowed a third party to take advantage of Mr. Benedict—Defendants' actions did not create that danger themselves. Therefore, Plaintiffs fail to establish the fourth prong of the state-created danger test.

Plaintiffs also do not plead facts that state a plausible claim under the first prong of the state-created danger test. This element requires plaintiffs to plausibly plead that the harm was both "foreseeable and fairly direct." *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013). Foreseeability requires that officials were aware, and thus on notice, of the risk of harm, *id.* at 282, while the "fairly direct" portion of the test provides that defendants' actions cannot be "separated from the ultimate harm by a lengthy period of time and intervening forces and actions," *id.* at 285. Here, even if the facts could show foreseeability, they do not establish the "fairly direct" element. Defendants' actions (which are framed by the Complaint as inactions and omissions) are too remote to fulfill the "fairly direct" requirement. In *Morse v. Lower Merion School District*, the Third Circuit concluded that school officials' act of unlocking a door by which an attacker entered the building and murdered a teacher was too attenuated a cause of a

21

teacher's death to meet the first prong of the state-created danger test. 132 F.3d 902, 908–09 (3d Cir. 1997). Similarly, by this standard, any failure to monitor, supervise, or otherwise impose safeguards on third parties seeking to enter the treatment center here, allegedly resulting in a drug dealer's infiltration of the facility and subsequent sale of drugs to a recovering addict, is too remote to be the "catalyst for the harm" to Mr. Benedict. *Henry*, 728 F.3d at 285 (internal citation and quotation marks omitted).

The second and last-contested element of the state-created danger test requires Plaintiffs to plausibly plead that Defendants' behavior "shocks the conscience." *Bright*, 443 F.3d at 281. First, it is important to note that "negligence is not enough to shock the conscience under any circumstances." *Schieber v. City of Phila.*, 320 F.3d 409, 419 (3d Cir. 2003). To shock the conscience in the constitutional sense requires facts suggesting that officials acted at least with "deliberate indifference" or even with "intent to cause harm." *See Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006) (per curiam) (explaining that in situations requiring officials to make decisions without time to deliberate, the standard is heightened and Plaintiffs must show intent to harm instead of mere deliberate indifference). The officials in this case were not acting in a "hyperpressurized environment"—such as a high speed car chase—that would require intent to cause harm; they instead operated in an environment where they could make "unhurried judgments" about the safety procedures and protocols employed at the DRC. Their allegedly unconstitutional actions are governed by the deliberate indifference standard. *Walter v. Pike Cnty., Pa.*, 544 F.3d 182, 192 (3d Cir. 2008) (internal citation and quotation marks omitted).

Our Court of Appeals has crafted its definition of deliberate indifference for substantive due process purposes from Eighth Amendment precedent, explaining that it requires the official to "'both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and . . . also draw the inference.'" *Nicini*, 212 F.3d at 811 (quoting *Farmer*, 511 U.S. at 837); *Customers Bank v. Municipality of Norristown*, 942 F. Supp. 2d 534, 542 (E.D. Pa. 2013) *aff'd*, 563 F. App'x 201 (3d Cir. 2014). The Third Circuit has not yet ruled on whether officials may be liable for deliberate indifference in substantive due process cases when they *should have known* about a risk but did not, as opposed to when they *actually* knew of a risk and failed to act. *Id.* at 542 (citing *Nicini*, 212 F.3d at 811); *Kaucher*, 455 F.3d at 428 n.5 ("[W]e have not yet definitively answered the question of whether the appropriate standard in a non-Eighth Amendment substantive due process case is subjective or objective.").[16]

In this case, the Complaint alleges that officials knew of substantial risks of harm coming to participants in the program *before* the DRC shut down. ECF No. 1-2, at ¶¶ 15–20. What Plaintiffs fail to plausibly allege, however, is that the Defendants had actual knowledge of what Plaintiffs allege were the *continued* problems after the DRC re-opened. Without a specific factual allegation showing such knowledge, the Court cannot conclude as a matter of law that Defendants acted with deliberate indifference. Moreover, since Plaintiffs also cannot establish the first and fourth elements of a state-created danger claim, the Court need not attempt to divine the applicable rule in this area.

Because Plaintiffs do not, and cannot, make out a Fourteenth Amendment claim on either the special relationship or state created danger theory, the Court must dismiss that Count against Defendants Westmoreland County and Bruno Mediate in his individual capacity. Additionally, as with the Eighth Amendment claim, the Court concludes that amendment would be futile as to the Fourteenth Amendment claim because additional facts under the circumstances could not

---

[16] The Third Circuit did note that it has "expressed approval of a subjective standard" for measuring deliberate indifference in substantive due process cases. *Id.* at 427–28, 428 n.5.

establish a substantive due process violation as a matter of law. *Phillips*, 515 F.3d at 236. The dismissal of Count IV will thus also be with prejudice.

### C. Remand to State Court

As explained in greater detail above, the Court will dismiss with prejudice the two federal claims that provided this Court with jurisdiction over the action.[17] Under the circumstances, the Court declines to exercise supplemental jurisdiction over the remaining state law claims as to certain Defendants, and will remand this action to state court. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 135 (3d Cir. 2013). Indeed, "[t]he Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, 'the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Kahan v. Slippery Rock Univ. of Pa.*, ___ F. Supp. 3d ___, No. 12-407, 2014 WL 4792170, at *41 (W.D. Pa. Sept. 24, 2014) *reconsideration denied sub nom. Kahan v. Slippery Rock Univ. of Pa.*, No. 12-407, 2014 WL 7015735 (W.D. Pa. Dec. 11, 2014) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). The Court discerns no "affirmative justification" for retaining jurisdiction over the remaining state law claims, especially in light of the fact that the Benedicts originally filed the Complaint in state court. Therefore, the case will be remanded forthwith for further disposition in the Court of Common Pleas of Westmoreland County, Pennsylvania.

---

[17] As noted above, because the Court concludes there has been no constitutional violation, it need not reach the arguments pertaining to qualified immunity, municipal liability, or supervisory liability. *Nicini*, 212 F.3d at 806.

## IV.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss Counts IV and V of Defendants Westmoreland County and Bruno Mediate in his individual capacity is granted and those claims are dismissed with prejudice.  Further, all of Plaintiffs' claims at Counts I–III are dismissed with prejudice (as stipulated by the parties) with regard to Westmoreland County and Bruno Mediate in his individual capacity.  Counts I–V are dismissed with prejudice as to Bruno Mediate in his official capacity.  Counts IV–V as asserted against Defendants Southwestern Pennsylvania Human Services, Inc. and Westmoreland Drug and Alcohol Commission are also dismissed with prejudice pursuant to the parties' stipulation.  Finally, the remainders of Defendants Southwestern Pennsylvania Human Services, Inc.'s and Westmoreland Drug and Alcohol Commission's Motions to Dismiss are denied without prejudice per their stipulations at oral argument.  This case is remanded forthwith to the Court of Common Pleas of Westmoreland County for further proceedings.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: March 24, 2015

cc:  All counsel of record